# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

MARIO M. TROLLINGER,

        Petitioner,      :    Case No. 1:13-cv-667

  - vs -                        District Judge William O. Bertelsman
                                   Magistrate Judge Michael R. Merz

WARDEN, Southern Ohio Correctional
Institution,

                                    :

        Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits. Petitioner has filed the Petition (Doc. No. 1) and a Traverse (Doc. No. 15). Respondent has filed an Answer/Return of Writ (Doc. No. 10). The case is accordingly ripe for decision.

Trollinger pleads the following Grounds for Relief:

> **Ground One**: Criminal Rule 16(D) & (F) are unconstitutional as applied to the facts of this case.
>
> **Supporting Facts:**
>
> Trial courts allowed the prosecuting attorney not to disclose the witnesses to defense counsel even though their [*sic*] was not one threat reported by any civilian witness of the two (2) of the witnesess [*sic*] held exculpatory evidence possibly excluding Petitioner.
>
> **Ground Two**: The evidence is constitutionally insufficient to obtain Petitioner's conviction.
>
> **Supporting Facts:**
>
> There is absolutely no evidence connecting Petitioner to the offenses of Murder and having Weapons Under Disability and

1

> absolutely no evidence what-so-ever indicating that there was an attempt to commit Aggravated Robbery.
>
> **Ground Three**: Actual Innocence.
>
> **Supporting Facts:**
>
> Petitioner Mario Trollinger is actually innocent of the charges of Murder, Aggravated Robbery, and Having Weapons Under Disability, as Petitioner had absolutely no involvement what-so-ever.

(Petition, Doc. No. 1.)

**Procedural and Factual History**

Trollinger was indicted by the Hamilton County Grand Jury in 2010 on one count of murder (Ohio Revised Code § 2903.02(B)) (Count 1); one count of aggravated robbery (Ohio Revised Code § 2911.01(A)(1))(Count 2); and one count of having weapons while under disability (Ohio Revised Code § 2923.13(A)(2) (Count 3). Counts 1 and 2 carried two firearm specifications (Return of Writ "Return", Doc. No. 10-1, Ex. 1, PageID 100). After a jury trial, Trollinger was found guilty as charged. The trial court merged Count 2 with Count 1 and also merged the specifications and sentenced Trollinger to 15 years to life for Count 1, 3 years for the merged specification, and 5 years for Count 3. All sentences were to be served consecutively for an aggregate sentence of 23 years to life.

On June 9, 2011, Trollinger appealed to the Court of Appeals of Ohio, First Appellate District, Hamilton County, raising nine assignments of error:

> 1. The presiding judge erred when it [sic] allowed the certification of nondisclosure of all lay witnesses.

> 2. The trial court erred to the prejudice of the Defendant-Appellant by not granting his motion to dismiss or alternatively, his motion for a mistrial.
>
> 3. The jury erred to the prejudice of the Defendant-Appellant by finding him guilty of murder, aggravated robbery, and having weapons while under disability, as those findings were not supported by sufficient evidence.
>
> 4. The jury erred to the prejudice of the Defendant-Appellant by finding him guilty of murder, aggravated robbery, and having weapons while under disability, as those findings were contrary to law.
>
> 5. The trial court erred to the prejudice of the Defendant-Appellant by overruling his Motion for Acquittal under Ohio Criminal Procedure Rule 29.
>
> 6. The trial court erred to the prejudice of the Defendant-Appellant by imposing a sentence that is an abuse of discretion.
>
> 7. The trial court erred to the prejudice of the Defendant-Appellant by allowing the alleged co-conspirator to testify.
>
> 8. The trial court erred to the prejudice of the Defendant-Appellant by allowing testimony related to a prior robbery.
>
> 9. The trial court erred to the prejudice of the Defendant-Appellant by allowing the prosecution to dismiss two black jurors.

(Return, Doc. 10-1, Ex. 38, PageID 235.)

The court of appeals set forth the facts of this case on direct appeal as follows:

> P2 On September 20, 2010, Kevin Isaac was shot multiple times as he waited at a bus stop. He died from his injuries. A surveillance camera at a community center across the street from the bus stop showed Ronnell Parks approach Isaac and shoot him. Parks was later apprehended by Cincinnati police officers.
>
> P3 Parks, who was 16 years old at the time of the shooting, testified that Trollinger had given him the gun with which he had shot Isaac. According to Parks, Trollinger had told Parks to rob

3

> Isaac and had threatened to kill Parks's uncle if Parks did not commit the robbery. Parks testified that Trollinger had told him to shoot Isaac if Isaac did not give Parks any money, and that Trollinger had a second gun with which he threatened Parks. Parks stated that he had approached Isaac and had told him to give him "something." When Isaac did not respond, Parks shot him four times. Parks testified that he had then run behind some buildings and had returned the gun to Trollinger. According to Parks, Trollinger told him to take off his shirt and run into the woods.
>
> P4 Deron Thomas testified that he had been in the area where the shooting had occurred. Thomas testified that he had seen Trollinger give a gun to Parks and had seen Parks shoot Isaac.
>
> P5 Juan Allen testified for the defense. According to Allen, he had seen Parks in the area the night before the shooting. Allen testified that he believed that Parks had had a gun at that time, and that he believed that Parks had been waiting to rob Allen's brother and friend.
>
> - * *
>
> P9 In this case, the assistant prosecuting attorney certified that he would not disclose the names of witnesses because the witnesses had indicated that they were fearful of Trollinger. Pursuant to Loc.R. 7(K) of the Court of Common Pleas of Hamilton County, General Division, an in-camera hearing was held before the presiding judge. During the hearing, Cincinnati police officer Sandy Hanes testified that one of the witnesses had seen Trollinger give Parks a gun and had seen Parks return the gun to Trollinger after the shooting. When the witness confronted Trollinger about the shooting, Trollinger allegedly told him, "[k]eep your mouth shut or you're next." Three other people who worked in the area where the shooting occurred expressed their fear of testifying against Trollinger. Based on the testimony of the police officers, the presiding judge determined that the assistant prosecuting attorney had not abused his discretion in refusing to disclose the names of the lay witnesses. And pursuant to Crim.R. 16(F)(5), the court ordered the assistant prosecuting attorney to disclose the list prior to the commencement of trial.

*State v. Trollinger*, 2012 Ohio App. LEXIS 2113 (Ohio Ct. App., Hamilton County, May 30, 2012). The court of appeals affirmed Trollinger's conviction and sentence. *Id.* The Ohio

Supreme Court declined jurisdiction over a subsequent appeal. *State v. Trollinger,* 133 Ohio St. 3d 1413 (2012).

On May 10, 2012, Trollinger filed a *pro se* post-conviction petition to vacate the judgment of conviction (Return, Doc. 10-1, Ex. 45, PageID 325). On October 6, 2012, the court denied the petition to vacate judgment *Id.* at Ex. 48, PageID 346. Trollinger did not appeal this decision.

On January 16, 2013, Trollinger filed a *pro se* motion for new trial alleging newly-discovered evidence *Id.* at Ex. 49, PageID 361. On January 17, 2013, the court denied said motion (*Id.* at Ex. 50, PageID 367. Trollinger did not appeal this decision.

On March 15, 2013, Trollinger filed a *pro se* habeas corpus petition in the Ohio Supreme Court indicating he was filing this original action in the Ohio Supreme Court as a belated attempt to exhaust in state court the federal habeas claims he planned to raise in a future federal action. (Return, Doc. 10-1, Ex. 51, PageID 368). The Ohio Supreme Court *sua sponte* dismissed the case on May 8, 2013 *Id.* at Ex. 52, PageID 382.

## Analysis

**Ground One: Unconstitutionality of Ohio R. Crim. P. 16(D) and (F)**

In his First Ground for Relief, Petitioner Trollinger asserts that Ohio R. Crim. P. 16(D) and (F) are unconstitutional as applied to him in this case. Rule 16 is the Ohio Criminal Rule providing for pre-trial discovery. Rule 16(D) provides that the prosecuting attorney may claim an exemption from disclosure by filing a declaration meeting certain parameters. Rule 16(F)

provides for judicial review of the declaration and claimed exemption.

Pursuant to Trollinger's demand for discovery, the prosecutor made the required declaration under Rule 16(D) and further stated that "[t]he State is unaware of evidence favorable to the Defendant. If the State becomes aware of additional discoverable information, this discovery response will be supplemented accordingly." (Return, Doc. No. 10-1, Ex. 5, PageID[1] 112-13.) The declaration was supported by the Prosecutor's Certification of Cause *Id.* at Ex. 6, PageID 114-16.

As indicated in the Return of Writ, Trollinger filed one or more motions to compel discovery, asserting that Rule 16(D) violated his constitutional rights to due process, confrontation, and effective assistance of counsel (Return, Doc. No. 10-1, Ex. 9, PageID 123; Ex. 11, PageID 130-34). These motions were all denied pre-trial. Post-trial, Trollinger moved for a new trial based in part on the same non-disclosure claim *Id.* at Ex. 32, PageID 193-202. The new trial motion was denied. *Id.* at Ex. 34, PageID 209. With new counsel, Trollinger appealed to the First District Court of Appeals, raising the following two relevant assignments of error:

> **First,** the presiding judge erred when it [sic] allowed the certification of non-disclosure of all lay witnesses [in that] the State did not present reasonable, articulable grounds for nondisclosure.
>
> **Second,** the trial court erred in denying the motion for new trial [in that] the State knowingly withheld *Brady* evidence.

(Appellant's Brief, Return, Doc. No. 10-1, Ex. 38, PageID 236.)

As to the First Assignment of Error, the First District Court of Appeals held:

---

[1] When documents are filed and docketed in this Court, the Court's electronic filing system automatically generates a page number for each filed page which appears in the upper right hand corner of the page and provides a way for the Court to find documents readily. This Magistrate Judge's Standing Order requires "2. All references to the record in this Court must be to the filed document by title, docket number, and PageID reference. (E.g., Defendants' Motion to Dismiss. Doc. No. 27. PageID_ .)" All future filings in this case shall comply with the Standing Order.

P7 In his first assignment of error, Trollinger asserts that the trial court erred when it allowed the assistant prosecuting attorney to certify that he would not disclose the names of the state's lay witnesses prior to trial. We review the trial court's regulation of discovery under an abuse-of-discretion standard. *State v. Parson*, 6 Ohio St.3d 442, 445, 6 Ohio B. 485, 453 N.E.2d 689 (1983).

P8 Crim.R. 16 regulates the discovery process between the state and a criminal defendant. Under Crim.R. 16(I), "[e]ach party shall provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call[.]" But if "[t]he prosecuting attorney has reasonable, articulable grounds to believe that disclosure will compromise the safety of a witness * * *," he may certify to the court that he is not disclosing the state's witness list. Crim.R. 16(D)(1). Upon motion of the defense counsel, the prosecuting attorney's certification of nondisclosure is subject to review by the trial court. Crim.R. 16(F). During the in-camera hearing, the trial court reviews the prosecuting attorney's certification for an abuse of discretion on the part of the prosecuting attorney. *Id*.

P9 In this case, the assistant prosecuting attorney certified that he would not disclose the names of witnesses because the witnesses had indicated that they were fearful of Trollinger. Pursuant to Loc.R. 7(K) of the Court of Common Pleas of Hamilton County, General Division, an in-camera hearing was held before the presiding judge. During the hearing, Cincinnati police officer Sandy Hanes testified that one of the witnesses had seen Trollinger give Parks a gun and had seen Parks return the gun to Trollinger after the shooting. When the witness confronted Trollinger about the shooting, Trollinger allegedly told him, "[k]eep your mouth shut or you're next." Three other people who worked in the area where the shooting occurred expressed their fear of testifying against Trollinger. Based on the testimony of the police officers, the presiding judge determined that the assistant prosecuting attorney had not abused his discretion in refusing to disclose the names of the lay witnesses. And pursuant to Crim.R. 16(F)(5), the court ordered the assistant prosecuting attorney to disclose the list prior to the commencement of trial. We are unable to conclude that the presiding judge's determination with respect to the nondisclosure was an abuse of discretion.

P10 Within this assignment of error, Trollinger also contends that the trial court further erred when it did not order the disclosure of the state's witness list until after the jury had been sworn in. But both at trial and in his appeal, Trollinger did not demonstrate that

7

> he was prejudiced by the timing of the disclosure. Accordingly, we conclude no abuse of discretion occurred in this regard. The first assignment of error is overruled.

*Trollinger,* 2012 Ohio App. LEXIS 2113.. There is no hint in this opinion that the First District understood a constitutional claim had been presented in the First Assignment of Error or that it was deciding any such claim.

The Second Assignment of Error, of course, did present a constitutional claim on its face by invoking *Brady v. Maryland*, 373 U.S. 83 (1963). The First District decided that claim as follows:

> P11 In his second assignment of error, Trollinger asserts that the trial court erred when it did not grant his motion to dismiss or his motion for a new trial. Before either side made its opening statement, Trollinger moved to dismiss the charges against him or, in the alternative, for a mistrial. Trollinger contended that the state had withheld exculpatory evidence in violation of his due process rights and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
>
> P12 Pursuant to the trial court's decision on the state's certification of nondisclosure, the state disclosed its witness list and witnesses' statements after the jury had been sworn in. Included was a copy of Jasmine Cornett's statement made to a police officer shortly after the shooting. According to the statement, Cornett claimed that another woman, Waneisha McCloud, had told her that a person named Mickeal Mingo had said that he had given Parks the gun. Trollinger contended that the state had improperly withheld this statement.
>
> P13 In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. The Ohio Supreme Court has clearly stated, however, that no *Brady* violation can exist when, as in this case, the evidence in question was presented to the defense during the trial. *State v. Wickline*, 50 Ohio St.3d 114, 116, 552 N.E.2d 913 (1990). Accordingly, we conclude that no *Brady* violation occurred here.

8

> P14 Even if we were to conclude that the state had improperly withheld the evidence, Trollinger's motion to dismiss or, in alternative, for a mistrial was properly denied, as Trollinger did not demonstrate that the evidence was material to his guilt. For Cornett's statement to be material, there had to be a reasonable probability that the result of the trial would have been different. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of the syllabus. The statement at issue in this case consists of hearsay and a vague description about what had allegedly occurred. And following the trial, during the hearing on his motion for a new trial, Trollinger's attorneys were unable to demonstrate specifically how earlier disclosure of the statement would have changed their strategy. We are unable to conclude that there was a reasonable probability that the outcome of the trial would have been different had the state disclosed the statement prior to trial.
>
> P15 We conclude that the trial court did not err when it denied Trollinger's motion to dismiss or, in the alternative, for a mistrial. The second assignment of error is overruled.

*Trollinger, supra.*

The Respondent asserts this First Ground for Relief is procedurally defaulted by Trollinger's failure to fairly present the claim on direct appeal as a federal constitutional claim (Return, Doc. No. 10, PageID 84-85). Respondent concedes that this constitutional claim was presented to the Ohio Supreme Court, but notes that that court will not consider constitutional claims which have not first been presented to the court of appeals. *Id.* at PageID 85, *citing, inter alia, Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir. 1985).

Trollinger replies that to the extent the constitutional claim was not presented on direct appeal, that failure is excused by the ineffective assistance of appellate counsel (Reply, Doc. No. 15, PageID 2139). However before ineffective assistance of appellate counsel can excuse a procedural default, it must first be presented to the state courts; if not thus presented, the ineffective assistance of appellate counsel claim itself is procedurally defaulted and cannot be

9

used to excuse some other procedural default. *Edwards v. Carpenter*, 529 U.S. 446 (2000). Trollinger does not claim that he has ever presented to the Ohio courts a claim that his appellate counsel provided ineffective assistance by failing to assert Ohio R. Crim. P. 16(D) and (F) are unconstitutional as applied in this case. Thus that claim is procedurally defaulted.

The First Ground for Relief on its face does not raise a *Brady* claim, but Trollinger argues in his Reply as if it did. As a *pro se* litigant, Trollinger is entitled to a liberal construction of his pleadings. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *McNeil v. United States,* 508 U.S. 106, 113 (1993). The Court will construe Ground One as raising a *Brady* claim. That construction is of no assistance to Trollinger, however, because he failed to pursue the *Brady* claim on appeal to the Ohio Supreme Court and thereby abandoned it. See *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

Ground One for Relief is procedurally defaulted and should be dismissed with prejudice on that basis.

In the alternative, if the *Brady* portion of Ground One were deemed to survive the procedural default, the Court would be bound to apply AEDPA deference because the First District decided that claim on the merits.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

As the First District noted, the Ohio Supreme Court has concluded no violation of *Brady*

10

occurs when *Brady* evidence is disclosed to the defense during trial. *State v. Trollinger, supra,* ¶ 13, *citing State v. Wickline*, 50 Ohio St.3d 114, 116 (1990). The Sixth Circuit has held that no *Brady* claim exists for adverse impact on trial preparation. *Webb v. Mitchell*, 586 F.3d 383, 391 (6th Cir. 2009), *quoting Wilson v. Parker*, 515 F.3d 682, 702 (6th Cir. 2008). Trollinger has not shown that the First District's decision is an unreasonable application of *Brady* or Supreme Court cases applying *Brady*. Ground One should be dismissed with prejudice on the alternative basis that it is without merit.

**Ground Two:  Insufficient Evidence**

In his Second Ground for Relief, Trollinger argues he was convicted on insufficient evidence on all three offenses, murder, aggravated robbery, and having weapons under disability.

The Warden asserts this claim is also procedurally defaulted in that it was raised on direct appeal, but not further raised on appeal to the Ohio Supreme Court (Return, Doc. No. 10, PageID 85).

Trollinger replies that this issue was omitted from appeal to the Ohio Supreme Court as a result of his receiving ineffective assistance of counsel at that level (Reply, Doc. No. 15, PageID 2141). He notes he accepted assistance from a group of attorneys who wanted to raise the *Brady* issue (presumably the timing of *Brady* disclosures) in the Ohio Supreme Court and he did not know they would limit his appeal to that point. *Id.*

Ineffective assistance of counsel can excuse procedural default only when it occurs in a proceeding where a defendant is constitutionally entitled to counsel under the Sixth Amendment. *Wainwright v. Torna*, 455 U.S. 586 (1982)(where there is no constitutional right to counsel there

can be no deprivation of effective counsel); *Riggins v. Turner*, 1997 U.S. App. LEXIS 6115, *5 (6th Cir. 1997); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002). The right to appointed counsel extends to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974). Beyond that, litigants are bound by the mistakes made by their attorneys.

Trollinger also asserts he avoided procedural default by presenting this claim in an original habeas corpus action he brought in the Ohio Supreme Court. As the Warden notes, the Ohio Supreme Court has repeatedly refused to consider claims of insufficient evidence in state habeas corpus. *State, ex rel. Bruggeman v. Leonard*, 86 Ohio St. 3d 298 (1999); *Cornell v. Schotten*, 69 Ohio St. 3d 466 (1994). Furthermore, under the Ohio criminal *res judicata* doctrine of *State v. Perry*, 10 Ohio St. 2d 175 (1967), an issue which could have been raised on direct appeal, including appeal to the Ohio Supreme Court, is barred from being raised in a collateral attack. The *Perry* doctrine is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001). Trollinger's Second Ground for Relief is therefore procedurally defaulted and should be dismissed with prejudice.

In the alternative, Ground Two is without merit. As previously stated, the First District Court of Appeals summarized the evidence at trial as follows:

> P2 On September 20, 2010, Kevin Isaac was shot multiple times as he waited at a bus stop. He died from his injuries. A surveillance camera at a community center across the street from the bus stop showed Ronnell Parks approach Isaac and shoot him. Parks was later apprehended by Cincinnati police officers.

12

> P3 Parks, who was 16 years old at the time of the shooting, testified that Trollinger had given him the gun with which he had shot Isaac. According to Parks, Trollinger had told Parks to rob Isaac and had threatened to kill Parks's uncle if Parks did not commit the robbery. Parks testified that Trollinger had told him to shoot Isaac if Isaac did not give Parks any money, and that Trollinger had a second gun with which he threatened Parks. Parks stated that he had approached Isaac and had told him to give him "something." When Isaac did not respond, Parks shot him four times. Parks testified that he had then run behind some buildings and had returned the gun to Trollinger. According to Parks, Trollinger told him to take off his shirt and run into the woods.
>
> P4 Deron Thomas testified that he had been in the area where the shooting had occurred. Thomas testified that he had seen Trollinger give a gun to Parks and had seen Parks shoot Isaac.
>
> P5 Juan Allen testified for the defense. According to Allen, he had seen Parks in the area the night before the shooting. Allen testified that he believed that Parks had had a gun at that time, and that he believed that Parks had been waiting to rob Allen's brother and friend.

*Trollinger*, *supra*. Having found those facts, the court of appeals concluded they were sufficient to ground the convictions:

> > P17 The standard of review for a sufficiency claim and for the denial of a Crim.R. 29 motion for an acquittal is the same. When an appellant challenges the sufficiency of the evidence, we must determine whether the state presented adequate evidence on each element of the offense. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541 (1997). On the other hand, when reviewing whether a judgment is against the manifest weight of the evidence, we must determine whether the jury clearly lost its way and created a manifest miscarriage of justice. *Id.* at 387.
> >
> > P18 Trollinger was charged with complicity in the commission of aggravated robbery and murder. Under R.C. 2923.03(A), Trollinger could be found complicit in the aggravated robbery and murder of Isaac if he purposely "[s]olicit[ed] or procure[d] another to commit the offense[s]" or "[a]ided or abet[ted] another in committing the offenses." We conclude that the state presented sufficient evidence of Trollinger's complicity in the offenses. The

> state also presented sufficient evidence that Trollinger had a weapon while under a disability. *See* R.C. 2923.13(A)(2). Further, having reviewed the record, we are unable to conclude that the jury lost its way in rendering its guilty verdicts. Trollinger takes issue with the testimony of Parks, but the jury was in best position to judge the credibility of Parks and the other witnesses.

*Id.*

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

14

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam*).

Trollinger does not dispute that there was testimony on each of the elements of murder, aggravated robbery, and having weapons under disability. Instead, he emphasizes that there was no physical evidence tying him to the offense, the video of the crime does not show him, and the actual shooter, Ronnell Parks, who inculpated Trollinger is bipolar and was not on his medication. (No record references are offered for the diagnosis or current state of medication, although Trollinger has been furnished with a transcript.)

Questions of credibility of witnesses are for the jury to resolve. Here, given testimony on every element, the jury resolved those questions against Trollinger. Therefore the Second Ground for Relief should be dismissed with prejudice on the merits, as well as being procedurally defaulted.

**Ground Three: Actual Innocence**

In his Third Ground for Relief, Trollinger asserts he should be granted habeas corpus relief because he is actually innocent of the crimes of which he was convicted.

The Warden responds that "[a]n actual innocence claim is not cognizable as an independent claim for relief." (Return, Doc. No. 10, PageID 79, citing *Herrera v. Collins*, 506 U.S. 390 (1993)). Trollinger appears not to appreciate this point of law, for he argues this claim is very important to him and involves a substantial amount of prosecutorial misconduct (Reply, Doc. No. 15, PageID 2143).

The Warden is correct that the United States Supreme Court has never recognized a "stand alone" actual innocence claim. To put the matter starkly, the Constitution does not

16

guarantee that an actually innocent person cannot be criminally punished; *Herrera* remains good law.

Actual innocence is relevant to habeas corpus cases because it involves a method by which a petitioner can be excused from his procedural default or other procedural bar. The Supreme Court recently held:

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup [v. Delo]*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.

*McQuiggin v. Perkins*, 569 U.S. ___, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019, 1035 (2013).

There is no need in this case to analyze Trollinger's new evidence of actual innocence because, with respect to the other two grounds for relief, the Court has found them to be without merit. That is to say, even if actual innocence were shown and it excused the procedural defaults on the first two grounds, Trollinger would still not be entitled to relief in habeas corpus.

Conclusion

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion,

Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

September 11, 2014.

s/ *Michael R. Merz*<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).